UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          File No. 1:02-CR-116

v.

                                          HON. ROBERT HOLMES BELL

AUBREY LYNN EADY,

        Defendant.

_____/

**O P I N I O N**

      This matter comes before the Court on Defendant Aubrey Lynn Eady's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court on January 2, 2003.

**I.**

      On September 6, 2002, after a two-day trial, a jury convicted Defendant of one count of bank robbery, in violation of 18 U.S.C. § 2113. On January 2, 2003, he was sentenced to 210 months in prison, restitution of $1,220.00 and a fine of $2,560.00. The judgment of conviction was entered on January 6, 2003.

      Defendant appealed his sentence, raising three issues: (1) the district court erred in refusing to order the government to grant immunity to two prospective defense alibi witnesses; (2) the court erred in permitting the jury to see a demonstrative exhibit comparing Defendant's known fingerprints with those left on the envelope of the robbery demand note;

and (3) trial counsel was ineffective in failing to object to the demonstrative exhibit. In an

unpublished opinion issued May 18, 2004, the Sixth Circuit affirmed the conviction and

sentence.  In relevant part, the Sixth Circuit summarized the trial evidence as follows:

> On December 3, 1999, someone robbed the Southern Michigan Bank
> and Trust branch located at 1425 Capital Avenue in Battle Creek, Michigan.
> The robber entered the bank and presented a teller an envelope in which there
> was a note that read, "This is a robbery.  Hand me 100, 50, and 20.  Don't
> move.  Act calm."  After reading the note, the teller gave the robber
> approximately $1,200 from the bank's drawers.  The robber then exited the
> bank, leaving the envelope and note behind.

> The Federal Bureau of Investigation ("FBI") investigated the crime and
> considered Mark Elliot Johnson – who was believed to have robbed other
> banks – to be a suspect.  In the process of investigating Johnson, the FBI
> questioned Denise Cross and Brian Lindsey, who were acquaintances of
> Johnson.  Apparently, Cross told the FBI that she may have assisted Johnson
> in committing another bank robbery, that Johnson admitted to her that he
> committed other bank robberies, and that she accepted from Johnson proceeds
> from one of those robberies and used them to purchase cocaine.  Lindsey
> purportedly gave investigators similar information and also stated that Johnson
> once attempted to recruit him to rob the Southern Michigan Bank and Trust
> branch on Capital Avenue in Battle Creek.  Neither indicated that Johnson
> actually robbed that branch on December 3, 1999, or planned to do so.

> After further investigation, the FBI concluded that Eady, not Johnson,
> committed the robbery in question.  On May 16, 2002, a grand jury returned
> an indictment against Eady charging him with robbing the bank on December
> 3, 1999, in violation of 18 U.S.C. § 2113.  Eady pleaded not guilty, and the
> case proceeded to trial in the United States District Court for the Western
> District of Michigan. . . .

> . . .

> Numerous other witnesses who testified at trial implicated Eady in the
> bank robbery.  The bank teller who was handed the note identified Eady as the
> robber.  Another teller who witnessed the robbery also identified Eady as the
> culprit.  A customer [Douglas Burt] who witnessed a suspicious man pacing

outside the bank immediately prior to the robbery described that man to a police sketch artist, who developed a sketch. The customer later identified the man as Eady from a photograph lineup and also identified Eady as that man in court. Finally, an acquaintance of Eady identified him as the person in the sketch.

The prosecution also presented an expert witness, who testified that fingerprints on the envelope left behind by the robber matched those of Eady.[1] In the process of explaining this conclusion to the jury, the expert used a chart labeled Government's Proposed Exhibit 21. One side of the chart displayed a fingerprint the parties agreed was Eady's, while the other side displayed a fingerprint obtained from Exhibit 2 – the envelope left behind by the robber, which was admitted into evidence. Using the chart, the expert explained why the two fingerprints were the same. Eady's trial counsel did not object to the expert's use of the chart. The chart, however, was never entered into evidence.

*United States v. Eady*, No. 03-1204, slip op. at 2-3 (6th Cir. May 18, 2004).

On September 22, 2004, Defendant filed the instant § 2255 motion to vacate, set aside or correct sentence. Defendant makes a number of arguments concerning the ineffectiveness of trial counsel, including trial counsel's failure to call alibi witnesses and failure effectively and intelligently to use peremptory challenges. In addition, he contends that trial counsel should have objected to a question from the Court that allegedly improperly influenced one of the jurors. He also complains that appellate counsel failed to raise appropriate issues on appeal. Finally, Defendant asserts that his sentence was impermissibly increased in violation of the Fifth and Sixth Amendments.

---

[1]The expert also testified that none of the fingerprints on the envelope matched a known fingerprint of Johnson.

3

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.  28 U.S.C. § 2255.  To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal.  *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996).  Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  The procedural

default rule does not apply, however, to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255.

> The statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made."

*Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995), *quoted in Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Where the judge considering the § 2255 motion also

conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

## III.

The files and records in this case conclusively show that Defendant is not entitled to relief in this action.

### A.  Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668, 687-88  (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if he was not prejudiced by counsel's error. *Id.* at 691. To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To determine if the defendant was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

When deciding a claim of ineffective assistance of counsel, a court "need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

### 1.    Alibi witnesses

Defendant contends that trial counsel was ineffective in failing to call two alibi witnesses, April Tankson and Mr. Walker. According to Tankson's affidavit dated

December 13, 2004,[2] Tankson was Defendant's girlfriend at the time of the bank robbery. She avers that she would have testified that Defendant was present in her home on date of the robbery, December 3, 1999, between 7:00 a.m and 12:00 p.m., and that she told defense counsel in July 2002 that she would so testify.  She also avers that prosecution witness Douglas Burt had been a visitor in her home on several occasions and that he knew Defendant prior to the robbery.  Finally, she avers that Mark Johnson, the man initially investigated by police, had cut Defendant's hair in Tankson's home on more than one occasion and that Johnson and Defendant have very similar looks.  (Tankson aff. ¶¶ 5-10; Docket #114.)

Tankson's affidavit is in direct conflict with the affidavit she signed on June 7, 2002, in preparation for a defense motion to dismiss for pre-indictment delay.  On that date, much closer to the time of the robbery, Tankson averred that she had no specific memory of what either she or Defendant had done on December 3, 1999.  Counsel avers that, in light of the affidavit she had signed, he felt he could not call her to testify because she had no memory of the date.

Tankson's contradictory 2004 affidavit is, on its face, incredible in light of her 2002 affidavit.  Moreover, even if Tankson's 2004 affidavit could be believed, it would not support a finding of ineffective assistance of trial counsel.  The decision whether to call a witness

---

[2]Tankson's affidavit actually is undated by Tankson, though Defendant signed, dated and had notarized the fourth page of the affidavit on December 13, 2004.

presumptively is a question of trial strategy.  *See Chegwidden v. Kapture*,  92 Fed. Appx. 309, 311 (6th Cir. 2004); *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001).  Here, given the existence of the 2002 affidavit, defense counsel's decision not to call Tankson as a witness unquestionably was both strategic and reasonable, regardless of whether Tankson subsequently advised him that she was prepared to testify otherwise at the trial.  The 2002 affidavit, which had been made a part of the record of the case, could and undoubtedly would have been used on cross-examination to destroy her credibility.  In addition, trial counsel already had successfully introduced evidence that Burt knew before the robbery that Eady was Tankson's boyfriend, thereby casting doubt on the credibility of Burt's initial description and identification, during which did not indicate he knew Eady.  Reasonable counsel would have concluded that, under these circumstances, Tankson's testimony would have been more harmful than helpful to Defendant's case.  Defendant therefore fails to overcome the strong presumption that counsel's performance was a matter of reasonable trial strategy based on the circumstances as they existed at the time.  *Strickland*, 466 U.S. at 689-90.

Defendant next asserts that counsel was ineffective for failing to call a Mr. Walker, who allegedly was mentioned in a statement provided by FBI Agent Rameriz.  Defendant alleges that Walker contacted defense counsel before trial and advised him that he was willing to testify for the defense concerning his knowledge of the bank robbery.  In his affidavit, defense counsel states that he has no recollection of any witness named Walker.

Defendant's allegations are insufficient to support his claim of ineffective assistance. Defendant provides no information regarding the testimony Walker supposedly would have provided on behalf of the defense. Defendant therefore has wholly failed to demonstrate the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 at 694.

### 2. Jury selection

Defendant next argues that defense counsel was ineffective in the use of peremptory challenges because he failed to excuse two specific jurors from the panel. First, Defendant alleges that Juror Hargrove should have been removed because her near vision was somewhat blurry due to recent retinal surgery that left her with a limitation on her ability to do substantial reading or to read fine print. Upon questioning by the court, Hargrove stated that her ability to review photographs would depend on the clarity of those photographs. (Tr. I, 77-79.) Hargrove subsequently was shown one of the photographs to be used in the case and stated that she was quite certain could see what it depicted. (Tr. I, 84-85.)

Defendant also alleges that counsel should have exercised a peremptory challenge to remove Juror Welter, who disclosed to the Court that he suffered from bi-polar disorder. Welter stated that he took his medication and had no reason to believe that he would have any problem sitting as a juror. (Tr. I, 72.) Defense counsel avers that he saw no reason to believe that Welter's controlled bi-polar disorder was disqualifying. Further, he avers that Hargrove was a fifty-ish black female, and he, on balance, believed her limited vision

10

problems were outweighed by the goal of preserving limited racial diversity on the jury panel.  Counsel further states that his regular practice is to confer with his client and obtain ratification for every juror seated and every peremptory challenge issued, and he is confident he did so in the instant case.

Defendant has not challenged counsel's representation that he was consulted about retaining both Hargrove and Welter on the jury panel.  As a result, it is uncontested that, knowing all of the circumstances about which he now complains, Defendant agreed to the selection of both jurors at the time of the voir dire.  He may not now assert that the decision to leave Hargrove and Welter on the jury deprived him of his Sixth Amendment right to counsel.

Finally, regardless of whether counsel's decision was reasonable and strategic or whether Defendant actually concurred, Defendant's claim must be rejected because he has failed to establish that he was prejudiced by his attorney's performance.  Defendant fails even to allege that Hargrove struggled to review the pictures and was handicapped in her ability to appreciate the identity of the person pictured.  Similarly, he does not allege that Welter experienced a mood swing during trial that impaired his function as a juror.  Far from a situation in which the seated jurors had actual bias or a clearly disabling condition, both of the challenged jurors in his case confirmed that they could fairly try the case.  *Cf. Tinsley v. Million*, 399 F.3d 796, 805-06 (6th Cir. 2005) (party challenging the seating of a biased juror

11

must show actual bias); *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (same);

*Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (same).

### 3.    Failure to object to court's question to juror

Defendant next argues that counsel was ineffective when he failed to object to the

following questioning of juror Hargrove:

> THE COURT: Now, the photographs that will be offered into evidence, I'm assuming will be offered to establish that the person that was at the bank on that day in question was, in fact, the defendant.  Now, I haven't seen these photographs, and I'm not suggesting for a second what these photographs will or will not show, because that's the job of the jury in this case.  *If your job was basically limited to looking at these photographs, would you be able to effectively do that?*

(Tr. I, 80 (emphasis added).)  Defendant contends that the Court's question improperly

suggested that Hargrove's role as a juror would be limited only to looking at the photograph,

not considering the other evidence presented in the case.  He asserts that counsel should have

objected to the Court's limitation on the juror's role.

Defendant's argument is frivolous. The question was directed only to juror Hargrove's

reservations about her ability to see fine print and pictures.  Hargrove unquestionably

understood the Court's question, and she responded appropriately: "I'm not sure how clear,

it would depend on the clarity of the photographs.  My vision is impaired because of –

because of the eye surgery.  And I'm not sure."  No reasonable person would have understood

the question as an instruction to Hargrove that she consider nothing more than certain

unidentified photographs in her evaluation of the case.  Counsel clearly was not ineffective in failing to lodge an unreasonable objection to the question.

### 4.     Failure to object to prosecutorial misconduct

Defendant next asserts that the prosecutor engaged in prosecutorial misconduct during closing argument by vouching for prosecution witnesses and commenting on Defendant's failure to testify.  He asserts that trial counsel was ineffective in failing to object to the prosecutor's comments.

In order to determine whether counsel was ineffective in failing to object, the Court must first consider whether the prosecutor engaged in misconduct.  As a general rule, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context."  *United States v. Young*, 470 U.S. 1, 11 (1985).  In *United States v. Carroll*, 26 F.3d 1380, 1384-90 (6th Cir. 1994), the Sixth Circuit constructed a framework to review claims of prosecutorial misconduct.  First, the court must determine if the prosecutor's statements were improper. *Id.*; *see also United States v. Bess*, 593 F.2d 749 (6th Cir. 1979).  If the statements are found to be improper, the court must determine if the impropriety was flagrant under *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976).  *Carroll*, 26 F.3d at 1385.  To determine flagrancy, the court should consider four factors: (1) whether the remarks tended to mislead the jury or to prejudice the accused (including whether the trial judge gave an appropriate cautionary instruction to the jury); (2) whether they were isolated or extensive; (3) whether they were

13

deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *Id.* at 1385 (quoting *Leon*, 534 F.2d at 678-83). If the comment is determined not to be flagrant, the court will reverse only "when (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction." *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995) (citing *Carroll*, 26 F.3d at 1384-90). *See also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The federal courts generally have recognized two types of objectionable vouching. The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *Carroll*, 26 F.3d at 1388-89; *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

Here, Defendant complains that the prosecutor made the following improper statement during rebuttal argument:

> The same defendant that the witnesses identified, three of them said, 'that's the robber'. They were right. It's been proven.

14

(Tr. II, 239.)  Defendant suggests that by saying, "They were right," the prosecutor was

vouching.  Defendant, however, has taken the comment out of context.  The quoted remark

comes at the end of the following two-paragraph argument:

> So what you're left with is are you convinced that the witnesses were right when they came up with their identification?  And all the evidence suggests yeah, they were.  Not only did they give all similar descriptions, all four bank tellers – remember, one didn't make the I.D., she just says, "I couldn't do it."  But at least she was consistent and accurate to the extent of the height, five-ten; the weight, 150; the mustache; the skin coloring; no gloves, which ties into the expert's testimony.
>
> He said, "I can't tell you scientifically when anybody touched anything like a document unless I saw it."  If somebody saw it, then you would know when it was put on there.  Well, you know what?  Some people did see it.  The robber did not wear gloves, and the robber picked up this note in both hands and put it underneath the teller's window.  The robber's fingerprints should be on this document.  And the defendant's are.  The same defendant that the witnesses identified, three of them said, "That's the robber".  They were right It's been proven.

(Tr. II, 238-39.)  As the context makes clear, the prosecutor was not vouching for his

witnesses in either manner described by the courts.  Instead, his comment was based on his

preceding summary of the evidence.  The remark, therefore, was entirely proper in the

context in which it was made.

Defendant next contends that the prosecutor engaged in misconduct in the next

paragraph of his rebuttal argument:

> And there's absolutely no explanation before you of how the defendant got his prints on here, other than he was the robber.  There's nothing to suggest how that robber, coincidentally, ended up with this one piece of paper in the whole world that had the defendant's fingerprints from both hands on it.  Both of the defendant's fingerprints were on here.  Both of the robber's hands were

15

> on here.  The robber gave it to us, we've got it, and three people said, "That's the man".  They've corroborated each other.  There is no stronger case the government can make, unless those pictures were a little better in the bank, that would show you who the robber was.

(Tr. II, 239.)  Defendant complains that the first sentence amounts to an improper comment on Defendant's failure to testify, in violation of *Griffin v. California*, 380 U.S. 609 (1965), and *Doyle v. Ohio*, 426 U.S. 610 (1976).

The Court disagrees.  While a prosecutor is not permitted to comment upon a defendant's silence during closing argument, *Doyle*, 426 U.S. 610, not every comment concerning the one-sidedness of the evidence will be considered to directly or indirectly implicate that right.  In *United States v. Ursery*, 109 F.3d 1129 (6th Cir. 1997), the Sixth Circuit restated the test for determining whether a prosecutor's remark implicitly commented on a defendant's failure to testify:

> In order to find that a prosecutor has improperly commented on a defendant's Fifth Amendment right to remain silent, we must find one of two things: either that the prosecutor's manifest intention was to comment on the accused's failure to testify, or that the remark was of such a character that the jury would necessarily take it to be a comment on the failure of the accused to testify.

*Id.* at 1134 (citation omitted).

In the instant case, the prosecutor clearly was responding to the Defendant's closing argument, during which counsel asked the jury to reject the testimony of the fingerprint expert because the expert could not tell from the mere presence of Defendant's fingerprints when those prints were made.  The defense argued that the prints could have been made on the paper at some earlier time unrelated to the robbery.  In response, the prosecutor's remark

16

suggested only that, in light of the evidence that the robber held the paper in bare hands in the manner recorded in the prints, and given that the witnesses all had identified Defendant, speculation about the prints having been made in some other fashion was unsupported by either evidence or rational explanation.  The manifest intent was not to comment on the Defendant's silence, but instead to characterize the consistency of all of the evidence.  Nor was the remark of such a character that the jury necessarily would take it as a commentary on Defendant's failure to testify.  The Court therefore concludes that the comment, in context, was not an improper comment on Defendant's failure to testify.

Moreover, even if the prosecutor's comment were deemed improper, there is no indication that the challenged comment was "anything but [an] isolated, inadvertent remark[] on the part of the prosecution." *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996); *Brown*, 66 F.3d 124, 127 (6th Cir. 1995).  Any error, therefore, fails to rise to the level of prosecutorial misconduct.

Because the Court finds that no prosecutorial misconduct occurred, counsel may not be deemed ineffective for failing to object.  Defendant's claim of ineffective assistance, therefore, is denied.

B.    Denial of Sixth Amendment Right at Sentencing

Defendant argues that he was denied his Sixth Amendment right to a jury trial because the district court considered his criminal history in sentencing him, allegedly in violation of *Blakely v. Washington*, 124 S. Ct. 696 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466

17

(2000). Defendant contends that competent trial counsel would have challenged the sentence under *Apprendi* and that competent appellate counsel would have raised the claim on appeal. He contends that the claim would have been successful in light of the Court's subsequent decision in *Blakely*.[3]

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 489 (emphasis added). Defendant argues that the Court's determination that he was a career offender impermissibly increased his sentence beyond the statutory maximum within the clear meaning of *Apprendi*.

Defendant's argument is without merit. After *Apprendi*, the Sixth Circuit consistently held that the case applied only where the judicial sentencing finding increased the penalty beyond the prescribed statutory maximum and that the case did not apply to the federal

---

[3]Defendant did not raise an *Apprendi* claim in his direct appeal. As the Court previously noted, where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley*, 523 U.S. at 622. Here, in addition to raising a separate claim of ineffective assistance of appellate counsel, Defendant argues that the ineffective assistance of appellate counsel constitutes cause excusing his procedural default. As with his independent claim of ineffective assistance of counsel, in order to demonstrate cause excusing his default, Petitioner must show that his appellate counsel's failure to raise the ineffectiveness of trial counsel rose to the level of a constitutional violation under *Strickland*, 466 U.S. 668. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Where, as here, it is easier to evaluate the claim on the merits, the Court may skip the question of procedural default and proceed directly to the substantive claim. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003).

Sentencing Guidelines.  *See, e.g., United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002); *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001); *see also United States v. DeJohn*, 368 F.3d 533, 546 (6th Cir. 2004); *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *United States v. Solorio*, 337 F.3d 580, 597 (6th Cir. 2003).  In other words, at the time of Defendant's sentencing in 2003, the Sixth Circuit had squarely rejected his argument that *Apprendi* barred judicial fact-finding that would increase any sentencing guideline level.  As a consequence, had the issue been raised at sentencing, the law of the Sixth Circuit would have prevented this Court from applying *Apprendi* to the federal sentencing guidelines.

Moreover, four years after the Supreme Court's decision in *Apprendi* and after the Sixth Circuit affirmed his conviction, the Supreme Court addressed the application of *Apprendi* to the State of Washington's sentencing guidelines.  *See Blakely v. Washington*, 542 U.S. 296 (2004).  The *Blakely* Court concluded that *Apprendi* barred the increase of a sentence under state sentencing guidelines on the basis of any factual finding not made by a jury beyond a reasonable doubt.  *Blakely*, 542 U.S. 303-04.  Yet even after *Blakely*, the Sixth Circuit continued to hold that neither *Apprendi* nor *Blakely* applied to the federal Sentencing Guidelines, but instead applied only where the finding increased the penalty beyond the prescribed statutory maximum.  *See United States v. Koch*, 383 F.3d 436, 440 (6th Cir. 2004) (*en banc*).  Only upon the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738

(2005), well after Defendant's direct appeal was final, did the Supreme Court extend the reasoning of *Apprendi* to fact determinations under the federal Sentencing Guidelines.

Moreover, the Sixth Circuit since has held that the Supreme Court's decision in *Booker*, 125 S. Ct. 738, and its earlier decision in *Blakely*, 542 U.S. 296, both constituted "new rules" of criminal procedure, though they did not meet the requirements for retroactive application set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989). *See Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005). Defendant therefore is not entitled to retroactive application of *Booker* to this collateral proceeding.

Accordingly, Defendant is not entitled to relief on his Sixth Amendment claim.

C.    Ineffective Assistance of Appellate Counsel

Defendant contends that his appellate counsel rendered ineffective assistance when he failed to raise the issues set forth in Defendant's § 2255 petition. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the

20

performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2002).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.* at 289.

As the Court previously has determined, Defendant's claims of ineffective assistance of trial counsel based on counsel's failure to call alibi witnesses, to effectively use peremptory challenges during jury selection, to object to the Court's question, and to object to alleged prosecutorial misconduct are without merit.  Counsel may not be deemed ineffective for failing to raise meritless claims on appeal.  *See Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  Similarly, the Court has rejected Defendant's challenge to his sentencing enhancement as a career offender under *Apprendi, Blakely* and *Booker*, as Defendant had no established Sixth Amendment right under those cases at the time of his sentence and appeal.  *See Maples v. Coyle*, 171 F.3d 408, 427 (1999) (counsel cannot be found constitutionally ineffective for failing to raise an argument that would have been futile at the time it was made).  As a consequence, appellate counsel cannot be deemed ineffective for failing to raise on direct appeal any of the claims raised in the instant motion.

**IV.**

The files and records in this case conclusively show that the Defendant is entitled to no relief under § 2255.  Accordingly no evidentiary hearing is required to resolve the merits of the pending motion.  For the reasons stated herein, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied.  An order consistent with this opinion will be entered.


Date:    November 18, 2005            /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE